**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TDY INDUSTRIES, INC.,           )
                                )
            Plaintiff,          )       Civil Action No. 07-388
                                )
      v.                        )       Judge Cercone
                                )       Magistrate Judge Caiazza
HAMILTON SUNDSTRAND             )
CORPORATION,                    )
                                )
            Defendant.          )

**OPINION AND ORDER**

**I.   OPINION**

The Defendant's Motion to transfer (Doc. 5) will be granted, and this case transferred to the District of Connecticut.[1]

In this diversity action, the Plaintiff TDY Industries, Inc. ("TDY") seeks declaratory and monetary relief in connection with a contract it entered with Hamilton Sundstrand Corporation ("HSC"). *See generally* Compl. (Doc. 1) at ¶ 1.  Under the agreement, TDY manufactured and sold to HSC mechanical parts for use in airplane emergency power mechanisms.  *Id.* at ¶¶ 1-2. The parts failed, and disputes arose regarding whether the failure was caused by TDY's defective manufacture or

---

[1]  A motion to transfer venue involves a non-dispositive pretrial matter, subject to resolution by a magistrate judge.  Smith v. Carl Zeiss SMT, Inc., 2007 WL 686874, *1 (S.D. Miss. Mar. 5, 2007) (collecting cases).  While the Defendant alternatively moves for dismissal, a dispositive motion that would require District Court involvement, the undersigned need not reach the substance of said request to conclude that a transfer is appropriate.  Thus, the Defendant's alternative Motion (*see* Doc. 5) is **DENIED AS MOOT.**

HSC's provision of improper specifications.  *See generally id.*
at ¶¶ 3-5.

     In the instant Motion, HSC argues that the parties' written
agreement contains a forum selection clause requiring litigation
to proceed in Connecticut.  *See generally* Def.'s Br. (Doc. 6)
at 1.  Three days after the Plaintiff filed suit here, HSC
initiated litigation regarding the same issues in the federal
District Court for the District of Connecticut.  *Id.* at 10.
HSC asks this court to dismiss the case before it or,
alternatively, to transfer it to the Connecticut tribunal.
*Id.* at 2.

     For the reasons stated below, the undersigned agrees TDY is
bound by a valid and enforceable forum selection clause, and that
this case should be transferred to Connecticut.  Before reaching
these conclusions, however, the court quickly may dispose of
HSC's other arguments.

     The contract issue aside, counsel spend some time attempting
to persuade the court that the "first-to-file" rule should not
apply because TDY initiated the instant case in bad faith
anticipation of HSC's filing in Connecticut.  *See id.* at 11-16
(arguing court should invoke exception(s) to first-to-file rule);
*see also id.* at 9 (claiming that, during settlement negotiations,
TDY agreed to respond to HSC's demand within seven days, but
instead filed suit on sixth day, in anticipation of HSC's

filing).  HSC's reliance on the fist-to-file rule, and the
exceptions thereto, is curious, given that this <u>is</u> the first-
filed case and counsel urges the court to exercise jurisdiction.
*See* <u>E.E.O.C. v. University of Pennsylvania</u>, 850 F.2d 969, 971-72
(3d Cir. 1988) (first-filed rule "gives a court the power to
enjoin <u>the subsequent prosecution</u> of proceedings involving the
same parties and the same issues already before another district
court") (citation and internal quotations omitted, emphasis
added); <u>FMC Corp. v. AMVAC Chem. Corp.</u>, 379 F. Supp.2d 733, 737
(E.D. Pa. 2005) ("[t]he first-to-file rule is used <u>to dismiss or
stay a later-filed action</u>") (emphasis added); *see also id.* at 749
(court in second-filed case found exceptions to first-filed rule
applicable, and therefore declined to dismiss, stay, or transfer
action in favor of first-filed case).

To be sure, there is some authority supporting the
proposition that this court, not the one in Connecticut, should
determine the applicability of the first-filed exceptions.
*See, e.g.*, <u>Reliance Ins. Co. v. Six Star, Inc.</u>, 155 F. Supp.2d
49, 54 n.2 (S.D.N.Y. 2001) ("[t]he court in which the first-filed
case was brought decides whether the first-filed rule or an
exception [thereto] applies") (citation omitted).  Those
decisions come from other circuits, however, and they appear
inconsistent with the Third Circuit Court's application of the
doctrine.  *See* <u>E.E.O.C.</u>, 850 F.2d at 974 (affirming second-filed

-3-

court's refusal to dismiss action based on first-filed rule's exceptions).

In any event, the determination that TDY is bound by the forum selection clause renders moot HSC's arguments under the first-filed doctrine.  *See* discussion immediately *infra*.[2]

Turning to the parties' agreement, in August 2001, HSC entered into a "Blanket Requirements Contract" ("the Contract") with Tungsten Products, an unincorporated division of ATI Metalworking Products, one of TDY's trade names.  *See* Def.'s Br. at 3-4 (citing record evidence).  The Contract was signed by the parties, and it included an integration clause directing that the terms could be modified only through a signed writing of the parties.  *See* Contract (attached as Ex. 2-A to Doc. 6) at Art. XIV.

Article IV provided:

> In the event of any conflict between the [p]arties related to the applicable terms and conditions or the effect of this [C]ontract, the following order of precedence shall apply:

---

[2]  HSC's remaining argument, that venue is improper in this District, is without basis.  *See generally* Def.'s Br. at 24-25.  28 U.S.C. § 1391(a)(1) allows suit in "a judicial district where any defendant resides, if all defendants reside in the same State."  *Id.*  Although counsel have established that HSC is not incorporated in Pennsylvania and does not have its PPB here, the residency of a corporation under Section 1391 is found in "any judicial district in which it is subject to personal jurisdiction."  *Id.* at § 1391(c); *see also* Pl.'s Opp'n Br. (Doc. 9) at 24-25 (citing allegations supporting exercise of personal jurisdiction over HSC).

       A.    The text appearing in this Contract . . . .

       B.    Buyer Specifications.

       C.    Order Release.

*Id.*

Article VI, entitled "Conditions of Purchase," addressed the "Order [R]eleases" referenced in Article IV(C):

> Order releases against this contract will be governed by the text [o]f these Contract Terms, [and] Buyer's 'Standard Terms and Conditions of Purchase for Commercial Purchases of Goods and Services['] dated January 2001 . . . if applicable.

*Id.*

HSC has submitted the January 2001 "Standard Terms and Conditions of Purchase for Commercial Purchases of Goods and Services" referenced in the Contract ("the Standard Terms"). *See* Ex. 2-B to Doc. 6. Although the document was drafted on behalf of United Technologies Corporation ("UTC"), identified in the Complaint as HSC's parent corporation,[3] the Standard Terms' definitions section contemplates its use by both UTC and the company's "subsidiar[ies], division[s], affiliate[s]," *et cetera*. *See* Std. Terms at "Definitions" § A.

---

[3]  *See* Compl. at ¶ 17 ("[HSC] is a wholly-owned subsidiary of [UTC]").

The Standard Terms contain a section addressing the "Applicable Law and Forum," which states in relevant part:

> (a) Unless otherwise expressly agreed to in writing[,] this Order . . . shall be governed by the laws of the State of Connecticut, USA, without regard to conflicts of law principles. . . .
>
> Buyer may, but is not obligated to, bring any action or claim relating to or arising out of this Order in the appropriate court in the jurisdiction described in (a) above, and Supplier hereby irrevocably consents to personal jurisdiction and venue in any such court . . . .
>
> (b) Any action or claim by Supplier with respect hereto shall also be brought in the appropriate court in the jurisdiction described in (a) above, if Buyer so elects. Accordingly, Supplier shall give written notice to Buyer of any such intended action or claim, including the intended venue thereof, and shall not commence such action or claim outside of such jurisdiction if Buyer, within thirty (30) days of receipt thereof, makes its election as aforesaid. If Buyer and Supplier mutually agree to participate in alternative dispute resolution, Supplier agrees that all [ADR] proceedings shall take place in Connecticut.

*Id.* at ¶ 24.

As just seen, the parties' written Contract incorporates by reference a forum selection clause that defaults to Connecticut in the absence of HSC's contrary assent. Under the provision, it was HSC's prerogative to demand suit in Connecticut upon being notified of TDY's intention to sue. *See* discussion *supra*. TDY never provided notice, HSC never assented, and the filing of

suit in Pennsylvania was in violation of the forum selection clause.  *See id.*[4]

TDY's attempts to escape the forum selection clause are unavailing.  Counsel first seeks to invoke the liberal standards applied under Rule 12(b)(6), arguing the court is bound to accept TDY's assertion that the parties' relationship was controlled by its unsigned "Sales Order Acknowledgments."  *See* Pl.'s Opp'n Br. at 3, 21.

This argument fails on many levels.  Initially, the Complaint's allegation that TDY's Sales Orders are controlling is a legal conclusion, and it is entitled to no special consideration under Rule 12(b)(6).  *See* Bright v. Westmoreland County, 380 F.3d 729, 735 (3d Cir. 2004) ("[i]n ruling on a Rule 12(b)(6) motion, courts can and should reject . . . sweeping legal conclusions in the form of [f]actual allegations") (citation and internal quotations omitted).  Somewhat relatedly, it is the court's function to determine the legal consequences of the parties' documents, not the bare allegations in the

---

[4]  The court concludes that, reading paragraph 24 as a whole, the forum selection clause unambiguously required suit to be brought in Connecticut.  *See id.* (paragraph 24 addresses "Applicable Law and Forum," subparagraph 24(a) identifies only one possible "jurisdiction," *i.e.,* Connecticut, and 24(b) required supplier to bring suit in said jurisdiction absent HSC's assent) (emphasis added); *see also id.* at ¶ 24(b) (ADR provision, confirming by implication that jurisdiction contemplated was "Connecticut"); *see also generally* Pacitti v. Macy's, 193 F.3d 766, 773 (3d Cir. 1999) (contract should be interpreted "as a whole," and "where it is unambiguous . . ., the court interprets the contract as a matter of law") (citation omitted).

Complaint.  *See* <u>Ram Const. Co., Inc. v. American States Ins. Co.</u>,
749 F.2d 1049, 1053 (3d Cir. 1984) (contract construction is
"[an] issue . . . of law," and it determines "which legal
consequences are made to follow from the terms of the contract
and its more or less immediate context") (citations and internal
quotations omitted).  Finally, HSC has identified precedent
confirming that there is no "battle of the forms" here because
the parties' signed, integrated Contract preceded TDY's later,
unsigned Sales Orders.  *See, e.g.*, 8 Bus. & Com. Litig. Fed. Cts.
§ 86:1 (2d ed. 2006) ("the 'Battle of the Forms'" arises when
"the parties <u>do not have a single, integrated contract</u>, but have
sent opposing forms to one another") (emphasis added); *see also*
Def.'s Br. at 22 & n.21 (citing numerous cases for same
proposition); *and see also* discussion *supra* (Contract's
integration clause allowed modification only by signed writing of
parties).  TDY offers no response, and the objections based on
its Sales Orders are without merit.

TDY next challenges HSC's reliance on the Standard Terms,
noting the document was drafted on behalf of its parent, UTC.
*See* Pl.'s Opp'n Br. at 3, 21.  The Standard Terms were identified
with great precision in the Contract, however; the title of the
document and draft date were identical in both sources.  *See*
discussions *supra*.  The Standard Terms' definitions made very
clear, moreover, that the writing was meant to cover both the

corporate parent (UTC) and its subsidiaries (including HSC, as so identified in the Complaint).  Finally, TDY has failed to demonstrate any legal significance of the Contract's incorporation of a document initially prepared on behalf of HSC's corporate parent.

Counsel next complains that, when HSC invoked the Contract terms in November 2004, TDY requested a copy of the Contract and the Standard Terms were not provided.  *See generally* Pl.'s Opp'n Br. at 3-4, 21-22.  On this and the other bases identified above, TDY's counsel seeks to invoke equitable principles to avoid an application of the forum selection clause.  *See id.*

Counsel's arguments ignore the longstanding principle that "[c]ontracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood."  <u>Simeone v. Simeone</u>, 581 A.2d 162, 165-66 (Pa. 1990) (citations omitted).[5]

---

[5] "Although the application of a forum selection clause by a federal court sitting in diversity is determined under federal rather than state law," "it is first necessary to decide whether the forum selection clause is a part of the parties' agreement," a determination made under state law.  <u>M.K.C. Equip. Co., Inc. v. M.A.I.L. Code, Inc.</u>, 843 F. Supp. 679, 683 (D. Kan. 1994) (citation omitted).  Irrespective of whether Pennsylvania, Illinois, or Connecticut law applies, *see* discussion in text *infra*, the rule remains unchanged.  *See, e.g.*, <u>Randazzo v. Harris Bank Palatine, N.A.</u>, 262 F.3d 663, 670 (7th Cir. 2001) ("Illinois courts have made clear that, if a party signs a contract without reading it, he must bear the consequences") (citations omitted); <u>566 New Park Assocs., LLC v. Blardo</u>, 906 A.2d 720, 725 n.5 (Conn. App. 2006) (rejecting argument that document incorporated by reference was ineffectual because it "was never given to" resisting party; "[i]t was the defendants' responsibility . . . to become familiar with all the terms of the contract, including terms

If anything, TDY's (and its unincorporated division Tungsten
Products') status as sophisticated business entities only
heightened their obligations to be familiar with the Contract,
including the terms incorporated by reference.  *Cf., e.g.*,
Hangzhou Silk Import & Export Corp. v. P.C.B. Int'l Indus., Inc.,
2002 WL 2031591, *6 (S.D.N.Y. Sept. 5, 2002) ("[e]specially with
regard to sophisticated business people, capable of resort to
counsel for advice, . . . the law presumes that parties to a
contract will only sign it if they fully understand its terms and
conditions").

TDY and Tungsten are charged with the knowledge of, and have
agreed to, the terms of the Contract signed on their behalf.
HSC's alleged failure to provide the Standard Terms, over three
years after the Contract was signed, is of no legal consequence.
TDY is bound by the forum selection clause, its beliefs regarding
the equities not withstanding.

TDY also notes that the Contract itself has a choice of law
provision applying the laws of Illinois, rather than Connecticut.
*See* Pl.'s Opp'n Br. at 4, 22.  The Contract does, in fact,
contain a choice of law provision identifying the law of Illinois
as controlling.  *See* Contract at Art. XI ("[t]his contract shall
be construed, interpreted, governed and enforced in accordance

---

incorporated by reference," and they were "precluded from now arguing
that these terms [were] not part of the contract on the ground that
they did not read all of [them]") (citation omitted).

with the laws of the State of Illinois, USA"). Under Article IV, the Contract's choice of law provision would appear to take precedence over the Standard Terms' endorsement of Connecticut law. *See* discussions *supra*.[6] There is no basis, however, for concluding that the Contract's choice of law provision somehow vitiates the parties' agreement that suit must proceed in Connecticut absent HSC's contrary assent. *See id.*; *see also* Def.'s Reply Br. (Doc. 12) at 11 (quoting <u>Dorsey v. Northern Life Ins. Co.</u>, 2005 WL 2036738, *6 (E.D. La. Aug. 15, 2005) ("it is not illogical that a choice of law clause would select one forum's substantive law to resolve a dispute when a forum selection clause in the same agreement specifies a different forum as the place for the resolution of such a dispute") (citation omitted)).

Finally, TDY notes that Article VI of the Contract requires the application of the Standard Terms only "if applicable." *Id.*; *see also* Pl.'s Opp'n Br. at 22, 24 (quoting and emphasizing same). TDY raises this issue in connection with its argument that the provisions were drafted on behalf of UTC, not HSC, an argument already rejected. *See* discussion *supra*. This context aside, the court has every reason to believe the Standard Terms are applicable, as the instant dispute does in fact address

---

[6]  Although the undersigned is inclined to agree that Illinois law controls, comity dictates that the Connecticut Court receiving the transfer should make the choice of law determination.

a "[c]ommercial [p]urchase of [g]oods and [s]ervices."  *See*
Contract at Art. VI.

     As seen above, none of TDY's arguments allow it to
circumvent the clear terms of the Contract's forum selection
clause.  Under the circumstances, the provision "is presumptively
valid" and it is enforceable absent a showing that:  (1) it is
the result of fraud or overreaching; (2) enforcement would
violate strong public policy of the forum; or (3) enforcement
would in the particular circumstances of the case result in
jurisdiction so seriously inconvenient as to be unreasonable.
MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.,
2003 WL 21186124, *2 (3d Cir. May 21, 2003) (quoting published
Third Circuit precedent).  TDY bears a "heavy burden" in this
regard, and it has not begun to meet it.  *See id.* at *3 (citation
and internal quotations omitted); *see also id.* ("a valid forum
selection clause [should be] given controlling weight in all but
the most exceptional case").

     The Plaintiff makes no effort to show the forum selection
clause was the result of fraud or overreaching or that its
enforcement would violate a strong public policy of any forum.
To avoid the forum selection clause, then, TDY must show that
"resolution in the selected forum will be so manifestly and
gravely inconvenient . . . it will be effectively deprived of a
meaningful day in court."  *Id.*  All counsel offers are the

-12-

conclusory statements that TDY "chose to file this lawsuit in the state in which it is headquartered," and the "relevant evidence" and witnesses are located in other places.  *See* Pl.'s Opp'n Br. at 5.

These assertions do not rise to the level of "grave[] inconvenien[ce]," nor do they show that TDY "will be effectively deprived of a meaningful day in court" if made to litigate in Connecticut.  *See* discussions *supra*.  The Plaintiff has not met its heavy burden, and TDY cannot avoid enforcement of the forum selection clause.

HSC has shown that the parties' disputes must be resolved in Connecticut.  And while counsel suggests that a dismissal is justified, the court instead endorses the cited precedent indicating a transfer is more appropriate.  *See* Def.'s Br. at 18 (court has discretion to transfer based on "[the] individualized, case-by-case consideration[s] of convenience and fairness") (citation and internal quotations omitted).  Specifically, transferring this case to the District of Connecticut will allow for the convenient adjudication of TDY's claims for declaratory and monetary relief, by way of counterclaims to HSC's affirmative causes in that forum.

For all of the reasons stated above, the court hereby enters the following:

## II.  ORDER

The Defendant's Motion to transfer (**Doc. 5**) is **GRANTED**, and this case is **TRANSFERRED FORTHWITH** to the United States District Court for the District of Connecticut.

THESE THINGS ARE SO ORDERED.


June 14, 2007

Francis X. Caiazza
U.S. Magistrate Judge

cc (via email):

James P. Hollihan, Esq.
Michael J. McShea, Esq.

-14-